NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 09-1078

———


THE UNITED STATES OF AMERICA

v.

MOISES HERNANDEZ,
Appellant



On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 06-736)
District Judge: Honorable Robert B. Kugler


———


Submitted Under Third Circuit LAR 34.1(a)
April 16, 2010

Before: SLOVITER, and HARDIMAN, Circuit Judges, and POLLAK,[*] District Judge


(Filed:May 6, 2010)
———

OPINION

———

_____

[*] Hon. Louis H. Pollak, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

POLLAK, <u>District Judge</u>.

This is an appeal from a conviction for conspiracy to possess with intent to distribute crack cocaine in violation of 21 U.S.C. §§ 841, 846 and causing the death of another person by using a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924. Defendant argues on appeal that: (1) the district court erred by denying his motion to withdraw his guilty plea prior to sentencing; (2) the government breached its plea agreement with him; (3) the government coerced him into accepting a plea bargain and misled him; and (4) the district court erred by failing to award him a three-point reduction for acceptance of responsibility. He seeks to withdraw his guilty plea. We will affirm.

I.

Because we write for the parties, we recount only the essential facts. These charges arise out of an investigation into drug trafficking in Camden, New Jersey. In late June 2006, law enforcement officers intercepted and recorded conversations from the mobile telephone of an individual named Cesar Severino. The substance of the phone calls suggested that Severino had supplied defendant Moises Hernandez with crack cocaine but that Hernandez had complained that the crack cocaine supplied was of poor quality, leading Severino to promise to replace the drugs with higher quality material. On July 8, 2006, Severino was shot and killed. Hernandez was identified as the perpetrator by Edwin Saldivar, who was present when Severino was shot and who was also injured

- 1 -

during the episode. Two eyewitnesses standing across the street at the time of the shooting also identified Hernandez. Hernandez was arrested on July 13, 2006. Subsequent to his arrest, Hernandez waived his rights under *Miranda* and confessed to Drug Enforcement and Administration agents that he killed Severino in the heat of passion after Severino slapped him. Hernandez also confessed to the New Jersey Prosecutor's Office and Camden Police Department in a separate interview.

On October 25, 2006, the grand jury returned a 27-count indictment against Hernandez and five co-defendants. After the district court denied Hernandez's motion to suppress, Hernandez entered into a plea agreement with the government on April 28, 2007. He agreed to plead guilty to conspiracy to possess with intent to distribute more than 35, but less than 50, grams of crack cocaine in violation of 21 U.S.C. § 841 (b)(1)(C), 846, and causing the death of another person by using a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1)(A), 924(j), (2) (Counts I and II of the superseding indictment). In exchange, the government agreed that, if Hernandez complied with the terms of the plea agreement, it would recommend that the court impose a prison sentence of 240 months, 120 months each on Counts I and II to be served consecutively. On May 7, 2008, Hernandez pled guilty pursuant to the plea agreement. The district court engaged in a plea colloquy to ensure that Hernandez's plea was voluntary and knowing. After finding that Hernandez was "competent, capable of entering a knowing and intelligent plea" the court concluded that it was "satisfied that he

is in fact guilty."

On November 18, 2008, Hernandez filed a motion to withdraw his guilty plea to the offense of homicide. His motion was accompanied by an affidavit stating the following: (1) he had not killed Cesar Severino; (2) he had only pled guilty because he was afraid of receiving a life sentence; and (3) had he known that he would be indicted in New Jersey state court for the intentional killing of Severino, he would not have pled guilty in federal court. At a hearing on the motion conducted on December 12, 2008, Hernandez's counsel proffered additional evidence in the form of the following: (1) an affidavit from Hernandez's stepfather stating that he spoke to another individual who told him that an individual known as "Carlito" had confessed to the murder; that this same individual told him he had seen the weapon used in the murder; (2) a photograph showing that "Carlito" and Hernandez have similar appearances; and (3) hearsay information that additional individuals had identified "Carlito" as the murderer. When Hernandez testified under oath at the hearing in support of his motion, he explained that he pled guilty because he feared receiving a life sentence, that he was under the influence of drugs and was physically abused by law enforcement officers at the time of his confessions, and that he had not committed the murder. Hernandez also denied that Severino was supplying him with drugs.

The district court denied Hernandez's motion to withdraw his guilty plea and proceeded to sentence him. At sentencing, the government argued that Hernandez should

receive a sentence within the guidelines–namely a sentence between 330 to 350 months–instead of the 240 months stipulated in the plea agreement. The court calculated his Guideline Offense Level at 32 and Criminal History Category VI. Hernandez filed his Notice of Appeal on December 22. Hernandez was sentenced to a 210 month period of incarceration on Count I and 120 months on Count II, to be served consecutively, for a total of 330 months. On December 30, Hernandez moved to correct his sentence pursuant to Fed. Crim. P. 25. The district court denied that motion on January 30, 2009.

II.

We review the district court's decision to deny Hernandez's motion to withdraw his guilty plea under the abuse of discretion standard. *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2002). Once a defendant pleads guilty, he is not easily permitted to withdraw that plea. *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001) ("Once accepted, a guilty plea may not automatically be withdrawn at the defendant's whim."); *Gov't of V.I. v. Berry*, 631 F.2d 214, 220 (3d Cir. 1980) ("There is no absolute right to withdraw a guilty plea, and the right to do so is within the sound discretion of the trial court."). The burden is on the defendant to show "any fair and just reason" for the court to permit his plea to be withdrawn. F. R. Cr. P. 32(d). That burden is "substantial." *Jones*, 336 F.3d at 252. In deciding a motion to withdraw, the district court must consider three factors: "(1) whether the defendant asserts her innocence; (2) whether the government would be prejudiced by the withdrawal; and (3) the strength of the

defendant's reason to withdraw the plea." *Brown*, 250 F.3d at 815.

We find that the court did not abuse its discretion in denying Hernandez's motion to withdraw his guilty plea. The district court took note of, and evaluated, these three factors when it considered Hernandez's motion to withdraw his guilty plea. Although the district court found that granting Hernandez's motion would not prejudice the government, it denied Hernandez's motion on the ground that Hernandez had not supported his assertion of innocence with facts in the record supporting a claim to a defense, as required by *Brown*. Under our case law, Hernandez must present facts in the record supporting his claim of innocence. *Brown*, 250 F.3d at 818 ("Bald assertions of innocence, however, are insufficient to permit a defendant to withdraw her guilty plea. Assertions of innocence must be buttressed by facts in the record that support a claimed defense.") (citations and quotations omitted). In the district court's view, the evidence Hernandez presented was not necessarily inconsistent with his guilt. Since three witnesses stated that two people were present at the shootings, "Carlito" could have been the *second* person present. In fact, the court noted that when he confessed, Hernandez never shared the identity of the second individual with the police. At the hearing on Hernandez's motion to withdraw his guilty plea, the court also found it significant that Hernandez did not provide a credible alibi for his whereabouts during the murder, despite direct questioning about the matter.

In addition, the district court did not find credible Hernandez's explanations for his

three preceding confessions (referring to Hernandez's confession to the Drug Enforcement Administration, his confession to New Jersey Prosecutor's Office and Camden Police Department, and his guilty plea colloquy). Hernandez testified that he pled guilty only to avoid a life sentence in federal court, and, had he known that he was eventually also going to be indicted in state court for an offense carrying a life term of imprisonment, he would not have pled guilty before the district court. He further contended that the government told him there were no related cases, and that only after he "accepted the plea" did he learn that he had been indicted in New Jersey state court. However, when he testified in district court, Hernandez admitted that he was informed by his counsel prior to pleading guilty that there was a state court complaint alleging that he had murdered Severino. He also testified that counsel informed him that the maximum sentence for that offense in New Jersey was a term of life imprisonment. Accordingly, Hernandez's argument is without merit and the district court did not abuse its discretion in concluding that Hernandez had not met his "heavy burden" to withdraw his guilty plea.

Hernandez's second argument on appeal is that he should be permitted to withdraw his guilty plea because the government breached the plea agreement by requesting that he be sentenced to a term of incarceration within the applicable guideline range, rather than requesting a lower sentence of 240 months, as stipulated in the plea agreement. Because Hernandez did not raise this objection in the district court, we apply the plain-error test. *Puckett v. United States*, --- U.S. ----, 129 S.Ct. 1423, 1428, 173 L.Ed.2d 266 (2009).

Plain error review involves four steps:

> First, there must be an error or defect-some sort of [d]eviation from a legal rule-that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings. Fourth and finally, if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error-discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*Id.* at 1429 (citations and quotations omitted).

Contract principles guide our interpretation of the guilty plea agreement. *United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008). The government has "an obligation to adhere strictly to the terms of the bargain it strikes with defendants." *Queensborough*, 227 F.3d at 156 (citation omitted). The question for us is "whether the government's conduct is consistent with the parties' reasonable understanding of the agreement." *Id.* Thus, we begin by examining the relevant provisions of the plea agreement.

The plea agreement provided that Hernandez would plead guilty to Count I and Count II of the superseding indictment and "that neither party will argue for the imposition of a sentence outside the Guidelines range that results from the agreed total Guidelines offense level." The agreement stipulated that Hernandez was a Career Offender under U.S.S.G. § 4B1.1 and that the applicable Base Offense Level was 32. However, the agreement provided for possible reductions in the offense level as follows:

10. As of the date of this letter, Moises Hernandez has clearly demonstrated a

recognition and affirmative acceptance of personal responsibility for the offense charged. Therefore, a downward adjustment of 2 levels for acceptance of responsibility is appropriate if Moises Hernandez's acceptance of responsibility continued through the date of sentencing. See U.S.S.G. § 3E1.1(a).

11. . . . If Moises Hernandez enters a plea pursuant to this agreement and qualifies for a 2-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and if in addition Moises Hernandez' offense level under the Guidelines prior to the operation of U.S.S.G. § 3E1.1(a) is 16 or greater, [he] will be entitled to a further 1-point reduction in his offense level pursuant to U.S.S.G. § 3E1.1(b).

12. . . . the parties agree that the total Guidelines offense level applicable to Moises Hernandez is 29 on Count I.

14. The parties agree that Criminal History Category of VI applies in this case, and that the corresponding Sentence Guideline range is 151 to 188 months imprisonment on Count 1 and would be 262 months to 327 months on Count 2, however, since the underlying murder was an involuntary murder the range is capped at 120 months imprisonment, see 18 U.S.C. § 924(j)(2) . . . .

15. The parties agree to recommend that the Court impose a prison sentence of 240 months (that is 120 months on Count I and a consecutive 120 months on Count 2) and further agree that a prison sentence of 240 months is reasonable and appropriate.

The government contends that Hernandez's motion to withdraw his guilty plea was a breach of the plea agreement's requirement that he continue to demonstrate acceptance of responsibility through the date of the sentencing.

We agree. In this case, it is clear that Hernandez vehemently maintained in his affidavit and testimony that he was innocent of the murder. He stated in his affidavit supporting his motion to withdraw his guilty plea that "'I really didn't do it.' In other words, despite my plea of guilty, I want the Court to know that I did not kill Cesar

Severino." There can be no other reading of this statement. By moving to withdraw his guilty plea on the ground that he was factually and legally innocent of the murder of Severino, Hernandez failed to demonstrate continued acceptance of responsibility. Under these circumstances, the government acted properly when it asked for a sentence within the guidelines range, rather than the sentence stipulated in the plea agreement.

Hernandez's third argument is that the government's offer of a reduced sentence in exchange for a guilty plea constituted coercion, and that the government lied or intentionally misled him about information relating to state court proceedings against Hernandez for Severino's murder. As we discussed above, we find unpersuasive Hernandez's allegation that the government misled him. With regard to Hernandez's argument that he was coerced into pleading guilty, the allegation that the offer to recommend a lower sentence pursuant to a guilty plea constitutes coercion is not sufficient to undermine a guilty plea. *See United States v. Sutton*, 794 F.2d 1415, 1422 (9th Cir. 1986) ("[B]are allegation of coercion, presented before this court for the first time, is not sufficient to set aside the plea of guilty on this direct appeal."). There is nothing inherently coercive about the government's offer to recommend a substantially lower sentence in exchange for a guilty plea. As the Supreme Court explained in *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978), "[A]cceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining

process." It is inherent that "the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial." *Id.*

Finally, Hernandez argues that the district court erred by failing to award him a three-point reduction for acceptance of responsibility. He contends that he should receive a reduction for acceptance of responsibility because he did not deny that he was guilty of the drug trafficking offense contained in Count I–he sought only to withdraw his guilty plea to the murder charge–and because the offense level calculation applied only to Count I. Under the Guidelines, a two-level reduction in defendant's base offense level is permitted "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a).[1] Because the "sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility . . . the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation." U.S.S.G. § 3E1.1 (commentary, note 5). Typically, the district court's factual determination that a defendant did not accept responsibility should be disturbed only if clearly erroneous, *United States v. Cianscewski*, 894 F.2d 74, 83 (3d Cir.1990), but because Hernandez did not preserve this claim, we review the issue for plain error, *see*

---

[1]  A one-level reduction is permitted only upon the government's motion and after the first two-point reduction has been awarded, and thus we do not review it here. U.S.S.G. § 3E1.1(b).

*United States v. Cefaratti*, 221 F.3d 502, 512 (3d Cir. 2000).

During Hernandez's guilty plea colloquy, he admitted under oath, in relevant part, to the following: (1) he was responsible for distributing and possessing with intent to distribute at least 35 grams but less than 50 grams of crack cocaine; (2) he knew an individual named Cesar Severino; (3) between in or about May 2006 and July 2006, Severino supplied him with crack cocaine; (4) on June 22, 2006 Severino supplied him with approximately 28 grams of crack cocaine; (5) Hernandez sold some of that crack cocaine in the area of 32nd and Pierce streets; (6) Severino had supplied with him poor-quality crack cocaine; (7) Hernandez confronted Severino about the poor-quality cocaine and Severino told him he would replace it; and (8) on July 8, 2006, Hernandez went to Severino's home to discuss the low-quality cocaine.

On December 12, 2008, when he testified in support of his motion to withdraw his guilty plea, Hernandez made the following statements under oath: (1) he was ready and willing to take a 120-month plea for the role in the drug case "unless the government tries to file some type of enhancements, 851s, career offenders or any type of penalty" in which case he would move to withdraw his plea; (2) he never met Severino; (3) there were phone calls between him and Severino; (4) he was attempting to buy drugs from Severino by "trying to get with him and meeting him somewhere"; (5) he never succeeded at meeting with Severino and thus Severino did not supply him with drugs; and (6) he should be charged with *attempting* to buy drugs from Severino because there was no

- 11 -

proof that he actually bought drugs from Severino.

Thus, given the conflicting statements made by Hernandez, one cannot readily conclude that, despite the fact that he did not *move* to withdraw his guilty plea to Count I, Hernandez has accepted responsibility for the offense of conspiracy to distribute and possess with intent to distribute cocaine. "A defendant seeking a reduction for acceptance of responsibility bears the burden of establishing by a preponderance of the evidence that he or she is entitled to the reduction." *United States v. Boone*, 279 F.3d 163, 193 (3d Cir. 2002). We have previously held that this adjustment is available "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." *Cianscewski*, 894 F.2d at 83 (citing U.S.S.G. § 3E1.1(a)) (district court did not clearly err where record reflected that defendant refused to cooperate with the probation officer during the preparation of the presentence report, failed to show up for his original sentencing hearing, maintained through sentencing that he was entrapped); *United States v. DeLeon-Rodriguez,* 70 F.3d 764, 767 (3d Cir. 1995) (acceptance of responsibility reduction properly denied because defendant was contesting factual and legal guilt). At the hearing, Hernandez denied the key fact relating to the drug trafficking offense–namely that Severino ever provided him with drugs. Instead, he testified that he attempted to "get together" with Severino, but that, in fact, they never engaged in any transactions. In light of this testimony, it would be hard to conclude that Hernandez was in fact accepting responsibility for distributing and possessing with intent

to distribute at least 35 grams, but less than 50 grams, of crack cocaine. Thus, the district court did not clearly err in denying Hernandez a two-level reduction for acceptance of responsibility.

III.

For these reasons, we will affirm the judgment of conviction and sentence