**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 24-2919

———————————

UNITED STATES OF AMERICA

v.

ROBERT THOMPSON
a/k/a
Thugga,

Appellant

———————————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3:23-cr-00026-012)
District Judge: Honorable Malachy E. Mannion

———————————

Submitted under Third Circuit L.A.R. 34.1(a)
on September 11, 2025

Before: CHAGARES, *Chief Judge*, PORTER and ROTH, *Circuit Judges*

(Opinion filed: June 10, 2026)

———————————

OPINION[*]

———————————

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

ROTH, *Circuit Judge*

Robert Thompson appeals his 121-month sentence for fentanyl trafficking. Because his appeal is barred by a valid appellate waiver, and because Thompson has failed to show that any exception to that waiver applies, we will affirm his judgment of sentence.

## I.

Thompson was part of a wide-ranging fentanyl distribution network, purchasing fentanyl pills from Arizona distributors and reselling them to Pennsylvania buyers. He came to the attention of authorities after a woman fatally overdosed on a pill purchased from a network-member. Thompson was later charged in February 2023 with one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846(a).

Thompson was arrested in March 2023 and granted pretrial release. That release was conditioned on him, *inter alia*, not committing additional federal, state, or local offenses, actively seeking employment, refraining from narcotics and excessive alcohol, and submitting to supervision by a pretrial services officer. In June 2023, Thompson's pretrial services officer reported that Thompson had tested positive for marijuana use on a drug test and had failed to actively seek employment. Although the government moved to revoke his release, Thompson was permitted to remain free subject to additional conditions (including increased substance use counseling). Unfortunately, Thompson's compliance failed to improve over the following nine months, as he would test positive four times more for marijuana (and three times for alcohol), drive on a suspended license, continue to fail to seek employment, and repeatedly lie to his pretrial services officers. These violations culminated in March 2024, when he was arrested by Scranton police officers and

2

charged—once again—with distributing fentanyl. The government then successfully renewed its motion to revoke Thompson's release.

On May 17, 2024, Thompson and the government entered into a plea agreement in which Thompson stipulated that he had been responsible for trafficking "at least 400 grams but less than 1.2 kilograms of fentanyl."[1] The agreement did not commit the government to a sentencing recommendation or require it to drop any pending charges. Among the primary benefits the agreement provided Thompson was a provision stipulating that, if he could "adequately demonstrate recognition and affirmative acceptance of responsibility to the Government as required by the Sentencing Guidelines," the government would recommend that he "receive a two- or three-level reduction in [his] offense level for acceptance of responsibility" under U.S.S.G. § 3E1.1.[2] As part of the agreement, Thompson agreed to a broad appellate waiver, barring him from raising "any and all possible grounds for appeal, whether constitutional or non-constitutional."[3]

The District Court accepted Thompson's guilty plea on May 23, 2024. The United States Probation Office prepared a pre-sentencing report, in which it recommended that Thompson be denied a § 3E1.1 reduction given his failure to comply with the conditions of his release. At sentencing, the government agreed that Thompson was ineligible for such a reduction due to his noncompliance. Thompson, meanwhile, objected and argued that he had adequately demonstrated acceptance of responsibility despite his infractions.

---

[1] Appendix ("Appx.") 45.
[2] Appx. 44.
[3] Appx. 27.

3

Thompson's counsel emphasized that the government "knew everything when [Thompson] took the plea, and they put in the plea agreement that they would provide a provision for acceptance of responsibility."[4]  The District Court overruled Thompson's objection and found that he had failed to demonstrate acceptance of responsibility.

The District Court ultimately sentenced Thompson to 121 months of incarceration, the bottom of his Guidelines range.  Had he received a § 3E1.1 reduction, Thompson's Guideline range would have been 87–108 months.  Thompson appealed.

## II.[5]

Thompson's sole challenge to his sentence is that the District Court erred in denying him an acceptance-of-responsibility reduction under § 3E1.1.  However, we do not reach the merits of his argument because it is covered by Thompson's knowing and voluntary appellate waiver.[6]  Thompson's arguments for releasing him from that waiver fail to persuade us otherwise.

## A.

Thompson's primary contention is that he cannot be held to his appellate waiver because the government's failure to recommend a § 3E1.1 reduction—which was based

---

[4] Appx. 89.

[5] The District Court had jurisdiction under 18 U.S.C § 3231.  We have jurisdiction under 28 U.S.C. § 1291.

[6] *See United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir. 2007) (noting that, while we retain jurisdiction over waived appeals, "we will not exercise that jurisdiction to review the merits" of such an appeal "unless the result would work a miscarriage of justice").

4

solely on his pre-bargain conduct—breached his plea agreement.[7]  Thompson is correct

that he would not be bound by his waiver if the government committed a breach.[8]  He is

also correct that his plea agreement was not toothless, even if it did not demand much from

the government.  "Although the analogy may not hold in all respects, plea bargains are

essentially contracts."[9]  Like other contracts, plea agreements carry an implicit "duty of

good faith and fair dealing in [their] performance."[10]  We have recognized that terms

conditioned on the government's "sole discretion" may thus be breached when the

government exercises that discretion in bad faith.[11]  If Thompson could show that the

government's recommendation was based *solely* on information it knew when it signed his

---

[7] In a peculiar twist, the Government argues that we should apply de novo review to this argument, while Thompson asks us to review for clear error.  *See United States v. Moscahlaidis*, 868 F.2d 1357, 1360 (3d Cir. 1989) (discussing the role of each standard in adjudicating breach allegations); *see also United States v. Moses*, 142 F.4th 126, 129 (3d Cir. 2025) (noting that "a party cannot waive, concede, or abandon the applicable standard of review" (quotation omitted)).  Neither party raises the possibility that *plain error* review may in fact apply given the arguably inadequate nature of Thompson's objection at sentencing.  *See United States v. Davis*, 105 F.4th 541, 548 (3d Cir. 2024).  Because we conclude that Thompson's arguments fail under any standard, we assume for the purpose of this opinion that de novo review applies.
[8] *See United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008) ("A defendant's appellate waiver is not enforceable if the government breaches its own obligations under a plea agreement.").
[9] *Puckett v. United States*, 556 U.S. 129, 137 (2009).
[10] *United States v. Isaac*, 141 F.3d 477, 483 (3d Cir. 1998) (quoting Restatement (Second) of Contracts § 205); *see also Davis*, 105 F.4th at 549.
[11] *Isaac*, 141 F.3d at 483.

plea agreement, we would agree that his waiver is likely unenforceable.[12] The problem is that he has not shown this.[13]

While undisputed that the government knew about Thompson's drug-distribution arrest and one of his positive marijuana tests when it signed his plea agreement, the government maintains that it was unaware of his remaining violations. Thompson's appellate brief does not dispute this representation, nor did he request an evidentiary hearing before the District Court to probe the government's good faith.[14] We therefore take the government at its unchallenged word. Doing so, and considering Thompson's repeated violations of his terms of release, we cannot conclude that the government acted in bad faith by arguing that Thompson had not accepted responsibility for his actions.

**B.**

Because Thompson has not shown the government breached the plea agreement, we will hold him to his appellate waiver unless doing so would work a "miscarriage of justice."[15] We have emphasized that only truly "unusual circumstance[s]" will clear this

---

[12] *See United States v. Roe*, 445 F.3d 202, 207 (2d Cir. 2006) (noting that "the government may not base its dissatisfaction with a defendant's performance of an agreement on facts known to the government at the time the agreement is executed"); *United States v. Knights*, 968 F.2d 1483, 1488 (2d Cir. 1992) ("Not only would it be unfair . . . it would have been fraudulent to have induced a defendant's plea with a promise that the government already knew it was not going to keep.").

[13] *See United States v. Floyd*, 428 F.3d 513, 526 (3d Cir. 2005) (noting that "[t]he defendant bears the burden of establishing by a preponderance of evidence that the Government has violated the plea agreement").

[14] *See Isaac*, 141 F.3d at 484 (providing a framework for such hearings).

[15] *See United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001) (noting that we look to "the clarity of the error, its gravity, its character . . . the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result" (citation modified)).

standard, and Thompson's are not among them.[16]  He claims that the denial of a § 3E1.1

reduction meant that he received "no gain in exchange for [his] waiver."[17]  But Thompson

got exactly what he bargained for—the government's good-faith consideration of whether

a reduction was warranted.  Nor, in the absence of a breach of Thompson's plea bargain,

does the District Court's decision that he had not shown acceptance of responsibility

arguably constitute a miscarriage of justice.[18]

**III.**

For the aforementioned reasons, Thompson's appellate waiver bars our

consideration of his appeal, and he has failed to persuade us that enforcing his bargained-

for waiver would work a miscarriage of justice.  We therefore affirm his judgment of

sentence.

---

[16] *See Khattak*, 273 F.3d at 562; *see also United States v. Castro*, 704 F.3d 125, 136 n.6
(3d Cir. 2013) (noting that, to constitute a miscarriage of justice, "[i]t is not enough that an
issue be meritorious").
[17] Appellant Br. 18.
[18] *See United States v. Mercado*, 81 F.4th 352, 361 (3d Cir. 2023) (affirming denial of
§ 3E1.1 reduction based on violations of conditions of release); *see also United States v.
Harris*, 751 F.3d 123, 127 (3d Cir. 2014) ("The district court [is] in a unique position to
assess [a defendant's] sincerity and we are especially deferential to its assessment of
whether the defendant accepted responsibility." (citation modified)).